IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## ISSAC SCOTT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04821    Lee V. Coffee, Judge**

**No. W2009-01256-CCA-R3-PC  - Filed March 2, 2011**

The petitioner, Issac Scott, appeals the post-conviction court's denying his petition for post-conviction relief from his conviction for first degree premeditated murder and resulting life sentence.  On appeal, he contends that he received the ineffective assistance of trial counsel and that the post-conviction court's denial of funding for him to hire a forensic pathologist violated his constitutional rights.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Issac Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

We glean the following relevant facts from this court's opinion in the petitioner's direct appeal:  On the night of December 12, 2002, the victim was working at the Gentlemen's Club.  State v. Issac Scott, No. W2005-02902-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 1026, at *2 (Jackson, Dec. 28, 2006), perm. to appeal denied, (Tenn. Apr. 30, 2007).  Derome Flemming testified that in the early morning hours of December 13, he saw the victim get into the petitioner's car and leave the club with the petitioner, whom people

at the club referred to as "psycho." Id. at **1-2. Tony Covington, the victim's father, testified that he had tried to persuade the victim to quit working at the club. Id. at *2. When she did not respond to family members' telephone calls and text messages on December 13, they began searching for her. Id. at **2-3. The police investigated the victim's disappearance and went to the petitioner's trailer. Id. at *4. The petitioner was cooperative and consented to searches of his home and car. Id. Sergeant William D. Merritt interviewed the petitioner on December 27 and December 30. Id. at *8. In the petitioner's first interview, he claimed he left the club about midnight and went home. Id. In his second interview, the petitioner claimed he picked up the victim from the club about 2:30 a.m., and they drove toward his home. Id. at *9. He said that when he refused to pay the victim two hundred fifty dollars for sex, she put "a little blade" to his neck and cut him twice on his left arm. Id. at **9-10. The petitioner grabbed the victim, choked her until she passed out, and pushed her out of the car. Id. at *10. He said that she was alive when he left her and that he heard her moan. Id. After the second interview, the police went to the culvert where the petitioner said he had left the victim and found her body. Id. Dr. O'Brian Cleary Smith, a forensic pathologist who performed the victim's autopsy, testified about the physical condition of her body. Id. at *4. The victim was wearing slacks and a coat. Id. at *5. Her coat had been unbuttoned, and her bra had been pushed above her breasts. Id. She had bruises on her neck and red abrasions on her genitalia. Id. at **5, 7. Dr. Smith concluded she died of manual strangulation, and he said it would have taken ninety seconds for a person to render another person unconscious by strangulation. Id. at **5, 6. Dr. Smith also thought hypothermia could have contributed to the victim's death. Id. at *6. Dr. Smith did not find any semen or vaginal injuries inside the victim. Id. at *7. Scientific testing on vaginal, anal, and oral swabs collected from the victim also failed to show any semen present. Id. at *11.

The jury convicted the petitioner of first degree premeditated murder. Id. On direct appeal, the petitioner claimed the evidence was insufficient to support the conviction because it failed to show he premeditated killing the victim. Id. This court affirmed the conviction. Id. at *17. After our supreme court denied the petitioner's application for permission to appeal, the petitioner filed a timely petition for post-conviction relief, raising several issues, including that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed amended petitions, arguing that the petitioner received the ineffective assistance of counsel, in relevant part, because trial counsel (1) failed to have an independent forensic pathologist challenge Dr. Smith's findings; (2) failed to request a mistrial when Derome Flemming testified that people at the nightclub referred to the petitioner as "psycho"; (3) failed to object to Tony Covington's testimony about various details of the victim's life and his involvement with searching for her; (4) failed to object during the State's closing argument when the State asked the jurors to look at the clock for ninety seconds in order to demonstrate the length of time the petitioner strangled the victim; and (5) failed to allege in the motion to suppress the petitioner's statements that the police

arrested him without probable cause on December 27, 2002.

At the post-conviction evidentiary hearing, trial counsel testified that she had worked for the public defender's office for thirteen years. She was appointed to represent the petitioner in 2003, and the defense's strategy was to show he did not premeditate killing the victim. She said she did not consider hiring an independent forensic pathologist because the cause of the victim's death was never an issue. Counsel said that she talked with Dr. Smith, that he told her strangulation incapacitated the victim, and that he told her hypothermia "set in." Counsel said that she thought Dr. Smith was "very credible" and that she "didn't see any other reasons to challenge his findings." She said that although Dr. Smith told her the victim's vaginal abrasions were "generally" seen in rape cases, he also told her the victim's abrasions could have been caused by "other trauma." Counsel explained that because Dr. Smith thought something other than rape or sexual assault could have caused the abrasions, she did not want to "try to find someone else who could possibly contradict that favorable information." Regarding Dr. Smith's conclusion that the victim had been strangled and that it would have taken ninety seconds to render her unconscious, counsel stated that she talked with her Judo instructor, a "master," who told her, "It doesn't take as long as people think it would take [to choke a person into unconsciousness], but you do have to have constant pressure."

Counsel acknowledged that Derome Flemming referred to the petitioner as "psycho" during the trial. Counsel said she did not object to his comment because she did not want to draw attention to it and because she did not believe his testimony was egregious enough to warrant a mistrial. Counsel acknowledged that Tony Covington gave favorable testimony about the victim at trial. Counsel said she did not object to his testimony because he also testified about the victim's tattoos, the victim's being a stripper, and how he "thought that wasn't a good moral way for her to be living." Counsel said she "wanted all that before the jury" and acknowledged she made a strategic decision not to object to his testimony. During the State's rebuttal closing argument, the prosecutor paused for ninety seconds to show the jury how long it would have taken for the petitioner to choke the victim into unconsciousness. Counsel said she did not object to the prosecutor's tactic because "I didn't think I had any real grounds that would . . . make it go away."

Counsel testified that she spoke with the petitioner several times about what occurred when the police came to his trailer on December 27, 2002. It was counsel's understanding that the petitioner went to the police department with the officers voluntarily and gave a statement. She acknowledged that the petitioner told her he was handcuffed, but she said the officers could have handcuffed him for their safety. She acknowledged that the petitioner told her the police promised him that he could return home if he answered some questions. She said that the police did not have enough evidence to arrest the petitioner for the victim's

murder on December 27 and that "[a]ll they had was that old case to hold him on." She then explained as follows:

> My understanding of what happened with Mr. Scott [on December 27] was [that he] was brought downtown for questioning in regards to [this] murder case, and then this old aggravated assault was developed while he was in custody and being questioned on the murder case so that, so that he could be held when they didn't get a statement . . ., but I couldn't develop anything legally that I could challenge the arrest on.

During his December 30, 2002 interview, the petitioner confessed to strangling the victim. Counsel filed a motion to suppress his statements on the basis that he did not waive his rights knowingly and voluntarily. During the suppression hearing, the petitioner testified that he requested to speak with an attorney before his December 27 interview. Counsel said, "He seemed really confused about the number of times and of whom he asked for a lawyer." Counsel said she did not argue at the suppression hearing that the petitioner had been denied his right to counsel because she did not think his testimony had been credible enough to make that argument.

On cross-examination, counsel acknowledged that when the police went to the petitioner's trailer on December 27, they knew the victim was missing and was last seen getting into the petitioner's car. She said that even if the police illegally arrested the petitioner on December 27, officers gave him Miranda warnings twice before his interview.

The post-conviction court denied the petition for post-conviction relief immediately after the hearing and in a written order. Regarding the petitioner's claim that counsel should have hired an independent forensic pathologist, the post-conviction court noted that counsel talked with Dr. Smith before trial, that counsel thought parts of his testimony would benefit the defense, and that counsel did not want another expert to contradict Dr. Smith's opinion. The post-conviction court concluded the petitioner was not entitled to post-conviction relief because counsel made a strategic decision not to hire an independent forensic pathologist. The court noted that the petitioner had requested funds to hire a pathologist for the post-conviction proceeding. However, the court stated that "Tennessee law does not allow the Court to make that appointment for this evidentiary hearing" and that "I cannot speculate as to what benefit it may have had."

Regarding Derome Flemming's reference to the petitioner as "psycho," the post-conviction court held that counsel's decision not to object and draw attention to the comment was a "reasonable tactic." The court also concluded that even if counsel had objected, the

-4-

trial court would not have granted a mistrial. As to testimony by the victim's father, the court again found that counsel made a tactical decision not to object in order for the jury to hear unfavorable information about the victim. As for counsel's failure to object when the prosecutor asked the jury to look at the clock and paused for ninety seconds, the post-conviction court said that the State had to prove the petitioner premeditated killing the victim and that "to have the jury look at a clock just to get a feel and get a sense of how long ninety seconds is, is arguing the facts of the case."

Finally, regarding trial counsel's failure to allege in the motion to suppress that the petitioner's statements to police should have been suppressed because the police did not have probable cause to arrest him on December 27, 2002, the post-conviction court made the following findings: On December 27, the petitioner went voluntarily with the police to the police department. There, the petitioner was charged with a crime in an unrelated case. The police read Miranda warnings to the petitioner, and he gave his first statement in this case, denying any involvement with the victim's disappearance. Trial counsel testified that under those circumstances, she had no reason to challenge the petitioner's arrest. The court accredited counsel's testimony and concluded that she was not ineffective for failing to file a motion to suppress on the basis of an illegal arrest.

The post-conviction court stated for the record that the evidence against the petitioner had been overwhelming and that nothing could have been done to change the outcome at trial. The post-conviction court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the petitioner maintains that he received the ineffective assistance of counsel because trial counsel failed to (1) hire an independent forensic pathologist to challenge Dr. Smith's findings; (2) request a mistrial when Derome Flemming testified that people at the nightclub referred to the petitioner as "psycho"; (3) object to Tony Covington's testimony about various details of the victim's life; (4) object during the State's closing argument when the State asked the jurors to look at the clock for ninety seconds in order to demonstrate the length of time the petitioner choked the victim; and (5) allege in the motion to suppress the petitioner's statements to police that the police arrested him without probable cause on December 27, 2002. In addition, he argues that the post-conviction court's denying his request for funds to hire an independent forensic pathologist violated his constitutional rights. The State contends that the petitioner is not entitled to relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing

evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the petitioner's first three issues, that trial counsel was ineffective because she failed to hire an independent forensic pathologist to challenge Dr. Smith's findings, failed to request a mistrial when Derome Flemming testified that people at the club referred

to the petitioner as "psycho," and failed to object to Tony Covington's testimony about various details of the victim's life, counsel stated that she did not want another pathologist to contradict Dr. Smith's findings, that she did not want to draw attention to Flemming's brief comment, and that she wanted the jury to hear unfavorable testimony about the victim. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief" as long as counsel's "'choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). The post-conviction court found that counsel's tactical choices were not unreasonable. We agree. Therefore, the petitioner has failed to show counsel rendered deficient performance.

As to the State's pause for ninety seconds during its closing argument, the petitioner argues that counsel should have objected because the State's actions were designed to inflame the passions of the jury. It is well-established that closing argument is an important tool for both parties during a trial and, therefore, that counsel is generally given wide latitude during closing argument. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). Nevertheless, "arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App.2003).

The petitioner has included a transcript of the closing arguments in the post-conviction record. Our review reveals that during trial counsel's closing argument, she said the petitioner did not premeditate killing the victim and choked the victim in self defense "to get her off of him." During its rebuttal argument, the State said,

> Ladies and gentlemen, this is no accident. . . . His [bare hand] for a minimum of ninety seconds to unconsciousness is what caused her death. Look at the clock for ninety seconds and see how long it takes, how long it took Issac Scott on December 13th in the early morning to choke her . . . . There is a red minute hand and if you can see it let's watch for ninety seconds, how long Issac choked her. (ninety second pause) Ninety seconds is a long time.

The State's rebuttal closing argument was in response to trial counsel's claim that the petitioner did not intentionally and with premeditation kill the victim. While somewhat unconventional, we discern no impropriety by the State's ninety-seconds pause. Therefore,

counsel did not render deficient performance by failing to object.

Next, the petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to allege in her motion to suppress his statements to police that officers arrested him without probable cause on December 27, 2002. The post-conviction court, addressing the issue orally at the conclusion of the evidentiary hearing, accredited counsel's testimony that she did not include the issue in the motion to suppress because it was without merit. In its written order, the post-conviction court concluded that the issue had been previously determined by the trial court. "A matter previously determined is not a proper subject for post-conviction relief." Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). See also Miller v. State, 54 S.W.3d 743, 747-48 (Tenn. 2001). Furthermore, "[a] ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h). Our review of the trial record reveals that trial counsel alleged in the motion to suppress that the petitioner did not knowingly and voluntarily waive his rights before he gave his statements to the police. Trial counsel did not argue during the suppression hearing that the petitioner's confession was the result of an illegal arrest. Furthermore, the trial court did not make a specific ruling on that issue at the hearing and did not address the issue in its written order denying the motion. Therefore, the issue has not been previously determined.

Nevertheless, we can conclude that the petitioner is not entitled to relief. Even if the petitioner was arrested without probable cause on December 27, the statement he gave to the police that day did not implicate him in the victim's disappearance or any other crime. Therefore, the petitioner has failed to show he was prejudiced by counsel's failure to argue that his statement was the result of an illegal arrest. We note that before the petitioner gave his first statement, the police charged him with aggravated assault in an unrelated case, and he remained in custody on that charge. On December 30, the police gave the petitioner Miranda warnings, they questioned him again about the victim's disappearance, and the petitioner confessed to strangling the victim. However, the petitioner was still in custody lawfully at that time for the aggravated assault. Therefore, his confession on December 30 was not the result of an illegal arrest, and he is not entitled to post-conviction relief on this issue.

Finally, the petitioner argues that the post-conviction court's refusal to give him funds in order to hire an independent forensic pathologist for the post-conviction proceeding violated his constitutional rights. However, "[i]n non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved." Tenn. Sup. Ct. R. 13 § 5(a)(2). Moreover, our supreme court has already determined that the State of Tennessee is under no constitutional obligation "to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912

S.W.2d 689, 696-97 (Tenn. 1995).

## III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the post-conviction court properly denied the petition for post-conviction relief.

_____
NORMA McGEE OGLE, JUDGE